## HORACE T. SMITH AND ANOTHER vs. MICHAEL FORAN.

A servant of the plaintiffs, who were common carriers, by his carelessness injured property which they were transporting and which was in his charge. The plaintiffs without suit paid the owner a certain sum in settlement, which was found to be the actual damage to him. Held—1. That the servant was liable to the plaintiffs for the actual damage sustained by them. 2. That it was not necessary that the liability of the plaintiffs and the amount for which they were liable should be first established by a suit against them. 3. That if the plaintiffs had unnecessarily paid the owner more than the actual damage to him, they could have recovered of the servant only such actual damage, and if they had settled for less, they could have recovered only for the damage actually paid.

TRESPASS ON THE CASE for an injury to property in the hands of the plaintiffs as common carriers, by the negligence of the defendant, who was their servant; brought to the City Court of the city of Meriden.

The declaration contained three counts, the first and second of which charged the defendant as bailee of a certain piano which the plaintiffs had delivered to him for safe keeping and to be transported from Meriden to Middletown, and which had, by his negligence, become injured. The third count alleged that the plaintiffs were common carriers, and that on the 15th day of May, 1872, they were employed for hire to carry a piano from Meriden to Middletown and safely deliver the same at the latter place, and that they employed the defendant as their servant to take charge of and carry and

Smith *v.* Foran.

deliver the same, and that by his negligence the piano became injured to the amount of two hundred dollars, which the plaintiffs were liable to pay and had paid to the owner and bailor of the piano.

The case was tried to the court on the general issue, and the following facts found by the court.

The plaintiffs, on the 15th of May, 1872, were partners and engaged in the carriage of goods for hire in the town of Meriden, and had the defendant in their employ as a workman. On that day they undertook, for a valuable consideration, to transport to Middletown for one T. T. Mansfield, a piano of the value of $175, which piano they entrusted to the defendant to deliver in good order in Middletown.

The piano was not boxed, but was properly packed in straw, upon a suitable wagon furnished by the plaintiffs to the defendant, which was drawn by horses driven by the defendant.

Upon the road to Middletown, and before the defendant had reached his destination, the straw in the wagon was set on fire by the gross carelessness of the defendant, who in smoking had communicated the fire from his pipe to the straw, whereby the straw was burned and the piano badly damaged, the amount of the injury to it being $155. The defendant thereupon returned the piano to the plaintiffs.

The plaintiffs, shortly after the accident, voluntarily paid to the consignor upon his request the sum of $155, in full settlement of the damage, and thereupon demanded the same of the defendant, which he refused to pay.

At the trial the defendant claimed that the law was so that, although the court should find that the piano was damaged by the gross negligence of the defendant, yet nevertheless as the plaintiffs had paid the damages without compulsion, they could not recover of the defendant; but to entitle them to a right of action against the defendant their liability must have been established by the judgment of a court of law.

The plaintiffs denied that the law was so, and claimed that they might pay such damages without incurring costs of suit, and that if it should appear upon the trial that the damages resulted solely from the carelessness of the defendant, and

the plaintiffs had paid the same to avoid the expense of a suit, he was liable to the plaintiffs without proof of a suit against them.

But the court held that the plaintiffs could not recover of the defendant unless their liability for the damage had been established by the judgment of a court in a suit brought against them by the consignor, and rendered judgment for the defendant.

The plaintiffs brought the record before the Superior Court in New Haven County by a motion in error, which court (*Granger, J.*) reversed the judgment of the City Court, and the defendant thereupon brought the record before this court by a motion in error.

*O. H. Platt*, for the plaintiff in error.

1. Upon the facts as found the only possible action which the plaintiffs could have against the defendant would be an action to recover of the defendant the amount they were compelled to pay to the party injured in consequence of the servant's misconduct. Such action could be based only upon the implied promise of the servant to indemnify the master against the damage he suffered in being compelled to pay to the party injured for the injury sustained by the servant's misconduct. The master may claim indemnity for the damage he suffers, not for his liability to damage. But this is an action brought to recover damages for the injury done to the piano; counting upon the injury of the piano as producing a direct damage to the plaintiffs. No recovery can be had upon that ground. The plaintiffs could not be damnified by the injury to the piano, but only by being compelled to pay Mansfield. No claim can be made that either the first or second count in the declaration is for the purpose of recovering from the defendant the money which the plaintiffs had paid Mansfield. But the third count is equally to recover damages for the injury of the piano. Although incidentally in this count, in speaking of the damage they have sustained, it is said, "which the plaintiffs are liable to pay and did pay to the owners and bailors of said piano,"—yet the *payment* is not

claimed as the ground of recovery. And nowhere in the declaration is there any allegation of any promise or liability on the part of the defendant to indemnify the plaintiffs for the payment made to Mansfield, or that they had been compelled to make such payment in consequence of the negligence of the defendant, or of any demand upon the defendant for reimbursement, or of any refusal of payment, or allegation of non-payment by the defendant. The master can only enforce the liability of the servant in the precise form of action adapted to the case. 2 Hilliard on Torts, ch. 26, § 22; *Merle* v. *Hascall,* 10 Miss., 406.

2. All the authorities agree that in an action by the master against a servant, because of an injury which a third party has sustained in consequence of the servant's negligence, the master must have been compelled to pay damages in a suit brought against him by the person injured by the servant's neglect. Smith's Master & Servant, 66; Sharswood's Blackstone, 431, note 17; Dunlap's Paley on Agency, 7; Am. Law Register, May, 1875, p. 277; *Grand Trunk R. R. Co.* v. *Latham,* 63 Maine, 177; *Newberry* v. *Conn. & Passumpsic Rivers R. R. Co.,* 25 Verm., 377; Addison on Torts, 3d ed., 24; Livermore on Agency, 363. Although in some states it is held that in covenants of warranty of title and for quiet enjoyment the covenantor need not wait for eviction, but may buy in his claim when convinced it is irresistible, the rule has never been applied to actions by a master against his servant. It is believed no case can be found in which the servant has ever been held liable to indemnify his master for money paid by him to a third party injured by the servant's negligence, unless the master had first been compelled to pay the same by suit brought against him. The liability growing out of the relation between master and servant differs essentially from the ordinary contracts of suretyship and indemnity, and from the case of principal and agent. The master directs, the servant serves. The liability of the master to a third party is always an open question. His liability can never be a fixed liability until judgment against him. The fixing of his liability by judgment and payment of the judgment alone gives

him a cause of action against the servant. The master never knows and never can know that he is liable until a court has so decided. Till then his liablity is at best contingent. He may never be sued, may never be compelled to pay. If not the servant is not liable, and the policy of the law forbids that the master, who is the superior, should himself settle the question of his liability, and then put his inferior to the expense of a suit. To permit this would be to open the door to oppression and extortion.

*G. A. Fay*, for the defendants in error.

The record finds that the piano was destroyed through the gross negligence of the servant, and that the plaintiffs paid the bailor $155, (its full value) for its loss, to avoid suit. The defence set up is, that as the bailees paid the bailor for the same without compulsion of law, they cannot recover against their servant, and that is the only question before this court.

1. The plaintiffs were common carriers and liable to the bailor for all damage except that caused by the act of God or public enemies. Story on Bailment, § 496. It was therefore their right and duty to settle without suit. If they paid more than the value of the piano, (which the record shows they did not,) the servant could in no event be prejudiced, as he had a full opportunity to defend, and did defend, in a suit against him to recover for damages resulting from his negligence.

2. It is established law that if a principal suffer from the negligence of his agent, the latter is liable to him for all damages. Story on Agency, §§ 200, 217 *c*. And the same rule prevails between master and servant. 1 Swift Dig., 69; Reeve Dom. Rel., 373; Schouler Dom. Rel., 626. And it is wholly immaterial whether the damage be direct to the property of the principal, or results from reparation which he has been obliged to make to a third person. Story on Agency, § 217 *c*.

3. Possession of property is sufficient to enable a party to maintain an action against a wrong-doer for an injury to it. *Little* v. *Fossett*, 34 Maine, 546; 2 Kent Com., 574; *White* v. *Bascom*, 28 Verm., 268; *Ashmead* v. *Kellogg*, 23 Conn., 76; Story on Bailment, §§ 394, 585.

4. Even in those cases where the plaintiff's right of action is dependent upon his having paid the loss, he need not wait to be sued, but may settle to avoid suit. *Swansey* v. *Chace*, 16 Gray, 303; *Duxbury* v. *Vermont Central R. R. Co.*, 26 Verm., 751; *Brown* v. *Hodgson*, 4 Taunt., 189; *Maydew* v. *Forrester*, 5 id., 615; *Smith* v. *Compton*, 3 Barn. & Adol., 407.

5. But this is not a case of that character, but of bailment simply, and it is familiar law that "the right of action in such cases is not in any sense dependent upon having indemnified the owner for his loss, or even of being liable to do so." Sedgwick on Dam., 4th ed., 310 note, 535; *Rockfeller* v. *Donelly*, 8 Cowen, 623, 648; *Harrison* v. *Marshall*, 4 E. D. Smith, 271; 2 Hilliard on Torts, ch. 11, sec. 22.

6. The measure of damages is the actual damages resulting from such negligence, and interest from the date of such payment by the plaintiffs. Sedgwick on Dam., 535; *Crouch* v. *London & N. Western Railway Co.*, 2 Car. & Kir., 789; *Ingersoll* v. *Van Bokkelin*, 7 Cowen, 680, and note on p. 681.

PARK, C. J. If the plaintiffs in this case had been the owners of the piano, which was injured through the carelessness of the defendant, it would be clear that the defendant would be liable to them for the amount of the damage done to the property; for a hired servant is as much bound to exercise reasonable care not to injure the property of his employer while engaged in his service, as he is to exercise such care in relation to the property of other persons. There is nothing implied in the contract of employment which absolves him from such responsibility, but on the contrary the implication is that he undertakes to exercise such care.

But it is said that the liability of the defendant to the plaintiffs in this case arises from the supposed liability of the plaintiffs to the person whose property was injured by the carelessness of the defendant while engaged in their business, and, this being the case, that the liability of the plaintiffs must first be established in a suit brought by the owner of the property against them, and the amount of damages ascer-

tained, before a suit can be sustained by the plaintiffs against the defendant. It is unnecessary to determine how this would be in an ordinary case of a liability of a master for the negligence of his servant, as where the servant in driving the master negligently runs into the carriage of another and injures it. There the master is liable in damages for the act of the servant, and the servant to the master for whatever loss he is subjected to by the servant's negligence. Here however another element comes in. The plaintiffs, being common carriers, had a special property in the piano and could as such special owners maintain an action against the servant for an injury by his negligence to such special property. And besides this, the plaintiffs, by reason of their undertaking as common carriers, were liable to the owner of the piano for its destruction or injury, even though it had been destroyed in the hands of the servant with no fault of his, as where the horses he was driving had run away and broken the piano in pieces, in spite of his careful driving and of his efforts to control them. The liability of the plaintiffs stands upon its own ground, their implied contract to deliver the piano in good condition at its place of destination, in spite of all obstacles except those caused by the act of God or of a public enemy. And this liability rests upon no other ground where the delivery is prevented by the negligence of their servant. He is liable to them for his negligence, they to the owner for the non-performance of their undertaking.

But the two kinds of liability have this in common, that where, as here, the carrier fails to deliver the property solely because of its destruction or injury by his servant, the amount of damage to which the carrier is liable at the suit of the owner, is precisely the same as that to which the servant is liable at the suit of the carrier. And upon this fact the counsel for the defendant base their claim that the plaintiffs should have first had their liability and the exact amount of it established in a suit at law before they could maintain a suit against the defendant. But the reason of the thing is wholly against this claim. In the first place, if the plaintiffs were liable to the owner of the piano, it is absurd to require

the owner to bring a suit, and the plaintiffs to defend against it, and finally pay, after a judgment and with costs, what they were perfectly willing to pay at the outset, and what the judgment would show they were legally bound to pay. And in the next place, the judgment would not establish the liability of the defendant. That, as we have seen, would stand upon its own ground, and his negligence, on which alone his liability would rest, would not even enter into the suit against the plaintiffs as a matter for consideration. He could still, in the suit against him, deny the fact of his negligence, and could prove the amount of the damage. All this he could do if the plaintiffs had settled with the owner without suit. If in such settlement they had paid the owner more than the actual damage, such payment would not have bound the defendant. He would be liable to them only for the actual damage. If, however, they had settled with the owner for less than the real damage, they could recover of the defendant no more than the damages paid. The damage which the defendant is to pay is the actual damage to the plaintiffs. That of course can not be greater than the sum they have had to pay, though it may be less, if they have unnecessarily and of their own folly paid more than they were obliged to pay. They were bound to pay the actual damage done to the piano, and if they got off with paying less, then they were themselves damaged so much less, and could recover only such reduced sum from the defendant.

Until the plaintiffs have settled with the owner it is to be presumed that they will be compelled, either upon a voluntary settlement or upon suit, to pay the owner the actual damage. If the defendant had reason to suppose that a settlement could be effected for a less sum, he could himself settle with the owner, and save the plaintiffs from the necessity of paying the damages at all; and this it would be equally his duty and his interest to do.

We think there is no error in the judgment complained of.

In this opinion the other judges concurred.